IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-434-F

| | |
|---|---|
| TIFFINY BENTLEY; JAMES DONALD HUNT; and CYNTHIA COLLIER HUNT, <br>      Plaintiffs, <br><br> v. <br><br> ALAN VESTER AUTO GROUP, INC.; ALAN VESTER; and UNIVERSAL UNDERWRITERS INSURANCE COMPANY, <br>      Defendants. | ORDER |

This matter is before the court on the defendants' Motion to Dismiss [DE-9] all claims against them, pursuant to Rule 12(b)(6), Fed. R. Civ. P. The plaintiffs have filed a Response in opposition thereto [DE-11], and the defendants have filed a Reply [DE-16]. The matter is ripe for disposition.

**Factual Allegations**

The plaintiffs are Tiffiny Bentley, who was 17 years old at the time of the transactions that are the subject of this lawsuit, and her mother and stepfather, Cynthia and James Donald Hunt. According to the Amended Complaint [DE-___],[1] Tiffiny, accompanied by the Hunts, selected a used Pontiac Sunfire at the Alan Vester car dealership in Oxford, North Carolina, on February 10, 2005. Because Tiffiny was a minor, the Hunts executed the sales contract with Vester's salesman, Ronald Stackhouse. The plaintiffs contend, however, that Vester wrongfully accessed Tiffiny's credit report using her correct social security number but the incorrect name,

---

[1] The plaintiffs have been directed to file a signed copy of their proposed Amended Complaint, Exhibit A to [DE-12], on or before October 2, 2009.

"Tiffiny Hunt." Tiffiny alleges that she did not give Vester her written permission to make a credit inquiry using her social security number.

The plaintiffs further allege that in the process of completing the financing application, Stackhouse instructed Tiffiny "to lie to the bank if it called," to say, "[y]ou put down $1000 cash" and "the equipment on this vehicle is: pwr windows, pwr door locks, cruise control, tilt steering, theft recovery system, compact disc player, alloy wheels." Amended Complaint [DE-____] at p. 3, ¶ 15 & Ex. 2 (handwritten note). In fact, no down payment at all was made and the equipment listed in the note was not installed on the car the Hunts were buying. *See id.* at § 18.

Tiffiny reportedly made the monthly payments on the car from February 2005 until September 2007, when she traded it for another vehicle. *See id.* at ¶¶ 22-23. She alleges that she was adversely affected in the financing of this new car because she owed so much more than the vehicle was worth due to Vester's falsified down payment (also referred to as its "customer funding assistance" ("CFA") plan; or "power booking" program). *See id.* at ¶¶ 23, 31. The Amended Complaint alleges that many other named Vester customers had been victimized in the same or a similar manner. The Amended Complaint does not allege that the Hunts were damaged by the alleged scheme.

### Claims Set Forth in the Amended Complaint

The Amended Complaint purports to state claims based on the following:

1. Fraud (North Carolina common law);

2. Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1(a));

3. Motor Vehicle Dealers and Manufacturers Licensing Law (N.C. Gen. Stat. § 20-285, *et seq.* (the "Dealer Act"));

4. Punitive damages (N.C. Gen. Stat. § 1D-1, *et seq.*);

5. Credit Repair Organization Act ("CROA") (15 U.S.C. § 1679, *et seq.*);

6. Fair Credit Reporting Act (15 U.S.C. § 1681, *et seq.*) (Tiffiny only);

2

7. Liability against Universal as surety (N.C. Gen. Stat. § 20-288(e)); and

8. Liability against Alan Vester, individually (North Carolina common law of agency)

**FEDERAL CLAIMS**

I. *Credit Repair Organization Act*

The defendants contend that the plaintiffs' CROA claim, Claim Five, must be dismissed because the defendants do not fall within the definition of a "credit repair organization" in 15 U.S.C. § 1679a(3), and are not among the "persons" referred to in § 1679b(a). The plaintiffs disagree, pointing out that the Amended Complaint alleges Vester assured consumers that it was, and "marketed itself as," a "credit rebuilder," *see* Amended Complaint [DE-___] ¶¶ 44-45, and therefore is a credit repair organization subject to CROA. Alternatively, plaintiffs rely on the fact that § 1679b(a) does not explicitly limit its prohibitions to "persons" actually involved in supplying consumer credit repair services.

The Fourth Circuit Court of Appeals has not interpreted the scope of the term "person" in § 1679b(a), and courts that have done so are split, the majority deciding that Congress intended to extend the "prohibited practices" only to "persons" acting in the context of credit repair organizations and services. The undersigned has considered the parties' arguments, the text of the relevant statutes, and the cases interpreting them, and concludes that the defendants' position is correct. In the interest of brevity and economy of judicial resources, the court hereby ADOPTS and INCORPORATES BY REFERENCE the opinion of Chief Judge Robert L. Hinkle in *Lopez v. ML #3, LLC*, 607 F. Supp. 2d 1310, 1311-14 (M.D. Fla. 2009). *See also Berry v. Cook Motor Cars, Ltd.*, Civil No. AMD 09-426, 2009 WL 1971391, slip op. at 2 (D. Md. June 29, 2009). For the reasons stated therein, the defendants' Motion to Dismiss the plaintiffs' CROA claim, Claim Five, is ALLOWED.

3

II. *Fair Credit Reporting Act*

Tiffiny Bentley alleges in Claim Six that she was the victim of the defendants' violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681b(f), as a result of Vester's obtaining her credit report without her knowledge or express written permission. She contends that someone accessed her confidential credit information in February 2005, without her consent. She believes it was Stackhouse who used her correct social security number and the name "Tiffiny Hunt," to impermissibly and unlawfully run her credit report. As a result, she contends, an October 6, 2006, Equifax report reflects that she was "formerly known as Tiffiny Hunt." Exhibit 1 to Amended Complaint [DE-___]. Additionally, she has attached a copy of a document from Carolina Information, Inc., dated December 12, 2006, alternatively listing her as "Hunt, Tiffiny." *See id.*

Tiffiny's handwritten addendum to her State of North Carolina Consumer Complaint, alleges in pertinent part that,

> As far as the background check, I feel like Alan Vester ran a credit check w/ my SS# but used a different name so that they could alter my personal information, income, etc., so that they could finance a car w/ me instead of my parents w/ less than perfect credit. As a result, on my background check, I am known by 2 names, & have never been married, etc.

*Id.* at Exhibit 2. The Amended Complaint alleges that "[a]s a direct and proximate result of Defendant's [sic] violations of the FCRA, Plaintiff Ms. Bentley is entitled to damages and other relief." Amended Complaint [DE-___] at ¶ 94.

Neither party has addressed the FCRA claim in its memorandum concerning the defendants' Motion to Dismiss. Nevertheless, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.' " *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Monroe v. City of Charlottesville, Va.*, ___ F.3d ___, No. 08-1334, 2009 WL 2749993, slip op. at 4 (4th Cir. Aug. 31, 2009). In *Twombly*, the Supreme Court upheld a

4

Rule 12(b)(6) dismissal because the complaint did not allege sufficient facts showing a claim was plausible rather than merely conceivable. *Twombly*, 550 U.S. at 570. Thus, "[i]n reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) ... [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

This court's careful consideration of Bentley's allegations supporting her FCRA claim result in the conclusion that those allegations do not meet the *Twombly* test. Even assuming that Stackhouse did run or attempt to run a credit report for "Tiffiny Hunt" using Bentley's social security number, she has not alleged in what way such action violated her rights protected in the FCRA, *cf. Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712 (E.D. Va. 2005) (car dealer did not violate FCRA by allegedly accessing buyer's credit report in connection with cars other than one buyer wished to purchase), nor has she alleged any facts describing the manner in which such action injured her. Although Bentley demonstrates that two credit reports obtained after 2005 list, in the alternative, the name "Tiffiny Hunt" in connection with her social security number, Bentley simply has alleged no facts that raise "a right to relief above the speculative level." *Id.* Therefore, Bentley's Claim Six is DISMISSED pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## STATE CLAIMS

The plaintiffs predicated subject matter jurisdiction for this lawsuit on the federal questions raised in Claims Five and Six. Dismissal of the plaintiffs' federal Claims Five and Six leaves pending only the supplemental state law claims, *see* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy as the claim within the court's original jurisdiction if (1) the claim raises a novel or

5

Case 5:07-cv-00434-F   Document 21   Filed 09/29/09   Page 5 of 6

complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C.A. § 1367(c).

Here, the court finds that at least the first three of these justifications exist for declining subject matter jurisdiction over the plaintiffs' supplemental state law claims. The court further finds that the factors of judicial economy, convenience, fairness, and comity support relinquishment of subject matter jurisdiction over the remaining state law claims. Accordingly, it is ORDERED, in the exercise of discretion, that the plaintiffs' remaining state law claims, Claims One, Two, Three, Four, Seven and Eight, are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote omitted).

## SUMMARY

For the foregoing reasons, the defendants' Motion to Dismiss is ALLOWED as to the plaintiffs' federal claims, Claims Five and Six, and those claims are DISMISSED. The plaintiffs' remaining claims, Claims One, Two, Three, Four, Seven and Eight, all predicated on North Carolina law, are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c). Any motions still pending are DENIED as moot, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 29th day of September, 2009.

*JAMES C. FOX*
Senior United States District Judge

6